May it please the Court, Your Honor, my name is Dee Tai, and I'm the attorney for the appellants, and I think I'll start off by saying that what the record and the briefings have made clear is that there are plenty of disputed issues of facts left in this case on material issues, and for that reason, the District Court's final order and judgment, which is, in essence, a sua sponte summary judgment entered by the District Court, should be reversed. Let me ask you a first question. Yes, Your Honor. We're not really reviewing all of the District Court's actions here de novo, are we? Well, Your Honor. These actions, as it relates to injunctions, are reviewed for abuse of discretion, are they not? But this injunction was entered as part of a summary judgment. Well, I understand, but the injunction would stand regardless of what we did on summary judgment. Well, Your Honor, the injunction that he entered was part of his final order and judgment. He did issue a preliminary injunction, didn't he? I believe he did enter a preliminary injunction. I believe that was fairly limited. Well, I just wanted to make sure as to how you viewed those injunctions in relation to the summary judgment, because generally I review an injunction for abuse of discretion. Well, Your Honor, the injunction would be viewed for abuse of discretion, but, again, if there was no law and no facts that supported the District Court's entrance, entry of that injunction, it would be abuse of discretion. In this particular matter, is there any evidence, well, is there any question that Hakeem told the judge that she knew the company was insolvent when the assignment was made? I do not believe, I do not recall that in the record, Your Honor. I recalled in the record, well, I saw in the record that Hakeem had told the judge that she knew the company was insolvent when the record was made. When the assignment was made. Yes, when the assignment was made. And also Marcus went on the record and said that the company was insolvent when the assignment was made. One thing that I would want to check on is whether these individuals understood what the legal implication or the legal requirement of insolvency meant. But it is true that they understood that the company that they formerly worked with was in financial straits and was probably in need of ---- The reason I asked that question, I thought it was pretty important, because if, in fact, Hakeem told the judge she knew the company was insolvent, and if, in fact, Marcus told the judge he knew the company was insolvent, then at the point where they started making assignments, there's no question that Marcus's expert confirms this idea, at that point they were transferring assets in a fraudulent attempt to keep their creditors from getting anything. One can make a legal decision after having those facts in the evidence, can't one? That all assets out of the poor corporation that had all of these assets, if they knew it was insolvent when transferred, then at that point it is being transferred in fraud of their creditors, and therefore all other decisions in this case are basically correct, as the district court found them, because the first assignment was fraudulent in fraud of its creditors. Well, Your Honor, I would say two things. First is that there was no fraud when there was nothing that was concealed from anyone. The creditors knew what happened. The first assignment was recorded. There was constructive notice that these marks were transferred. Had they filed bankruptcy? Excuse me? Had they filed bankruptcy when they transferred them? The company did not file bankruptcy at that time. Right. In fact, what happened was two people who knew what the company was worth, what it wasn't worth, knowing they owed a million dollars to FBT, started transferring out assets. But they transferred. As they say to the judge, we knew we didn't have any assets when we started transferring. But these transferred were actually known and constructively known to the company. So what? Whether they were known or not, the amount of assets in the company is the question, and FBT, if they don't know what the amount of assets in the company are at the time assets are transferred, then it seems obvious that those who do know there's nothing in the company when they transfer the assets have transferred in fraud of their creditors. Your Honor, I would say that fraud, though, is, first of all, a multi-element claim. Well, we're not talking about fraudulent in that respect. We're talking about in fraud of your creditors transferring assets is when you know my company doesn't have anything, but we need to get these assets in it that are worth something out to us so we can get it, and the creditors don't get anything, then that's in fraud. Your Honor, so you're talking about fraud in terms of fraudulent conveyance under the bankruptcy law. Yes. You're right. Then I would still have a problem with connecting that with the remedy and the injunction that the district judge here had entered, and also I would still say that the district judge did not cite any law and the appellees did not cite any law that would say that in that case, what we have here is what? I'm still not sure what the district judge claimed here. Somebody has to own these marks. They are in use. There was use under license or under some other claim or color of license, and to say that now suddenly nobody owns these marks or that they all own, have an equal claim to it, because his injunction stated that none of the parties can assert superior claim to each other about these marks. Well, all he did really was get rid of all the Federal marks and left everybody else to do what they could do with what's left, right? Well, I believe his injunction did say that the parties cannot claim superior rights to anyone else, and that would be, that would leave a situation where you have multiple parties, multiple businesses selling the same product under the same mark, and that I believe is not supported by trademark law or by fraudulent conveyance law. If you say that there was a fraudulent conveyance of this, of the trademarks, and I do not believe that there is a — We believe there's a genuine issue. There is still a genuine issue of that. And furthermore, that still leaves you with a question of what do we — what happened with these marks right now? The parties saw that, look, whether or not this was an asset — I mean, the reason I believe that there's a genuine issue that this was not a fraudulent conveyance was that everyone knew that these marks were worthless to anybody other than the people who are conducting the business. Well, except the creditors. Well, the creditors knew where the marks were. They knew it was recorded. They never tried to take the marks. They knew that Ms. Hakim — Did anybody ever say to FBT, come to the party? They knew where the party was before anyone had to tell them. They chased Ms. Hakim to Canada to get — to go after her personal properties. And in one sense, this issue did go to the bankruptcy court, which is that Ms. Hakim filed for personal bankruptcy, listed these assets, and, in fact, reopened her bankruptcy case after these issues came up to specifically list the trademarks as the assets. And FBT, who knew about this, followed all of these parties around, chased them to Washington State, to Canada, to San Diego, went after all of their properties, did not go after the trademark. Because if the fragrance business dies, the trademark is worthless. It wasn't fraudulent for my client to, in light of this fact, saying that, look, the old company was on its last leg. The FBT, the bank, would probably clean it out of all of its tangible assets. But we still have these fragrances that he's been — my client has been making for 20 years. They are valuable. They are being sold under this mark. These marks. And the parties at that point were trying to figure out some way to keep the goodwill and the business alive. And this is something that does happen, even in bankruptcy. In the E.H. Yacht case that I cited, there are many instances in which a bankruptcy court figures out how to dispose of an asset like a trademark. And here that asset, the transfer of that asset, was recorded with the trademark office. There was constructive notice on all of the creditors. And the creditors could also have involuntarily put the former company in bankruptcy if this was an issue. The district court basically jumped at — jumped to a lot of — made a lot of legal conclusions and made a lot of determinations of fact that had not happened either in a bankruptcy court or, in fact, even made by the parties in this case. And that's the concern we have here, is that just based on a — starting from, I believe, the first or second preliminary injunction hearings, and just based on that limited evidence, the district judge made a conclusion, a fact, that these parties are all fraudulent. They engaged in a fraudulent conveyance in — you know, to defraud the former company's creditors. And neither the facts nor the record have been developed enough for the district judge to reach that as a matter of indisputable fact. What do you want to have happen? Do you want to go back and start all over again? It needs to go back to the district court. The factual issues were just not fully developed. We have a situation here in which there was an attempt at a disposition. But where was the error that the district court committed in not developing further facts? Because the district court entered summary judgment based on the district court's own factual conclusions about — the parties originally never accused each other of defrauding — attempting to defraud creditors. This was something — They wouldn't. Why would they do it? Well, the creditors — I defrauded my creditors. No. You're right. Marcus's expert is as close as it comes. When Marcus's expert, Marshall, says, I've analyzed all this stuff on Marcus's computer, it shows they've backdated the resolution and created Hakeem's commission as consideration. Now, that's about as close as it comes. But we can't go on that. We've got to have undisputed evidence. That's why I put to you right at first. Hakeem told the judge she knew the company was insolvent. Marcus told the judge he knew the company was insolvent. They both transferred assets. The creditors were owed a million dollars. Judge hasn't got to go on disputed evidence on that if both the parties come in and said that's what happened. But if that — but if that asset was not — was not of value to any of the creditors, as has been demonstrated by the creditors' actions and also by Hakeem's reopening of her personal bankruptcy case, then there was no fraudulent conveyance. It wasn't an asset that was valuable to the creditors. And that was something that my clients knew. They gave up everything else. They gave up everything else to the creditors. The creditors cleaned out their — I believe their office furniture, filing cabinets, bank accounts, everything else. Their — this — it would not be enough for the district judge to conclude, based on these two parties' testimony, at a preliminary injunction level, they're making their own statement there about whether the company was insolvent or not. Again, that is — that is a layperson's understanding of the facts. And it was definitely true that they — they knew the company was in trouble and may probably be shut down by the creditors. And they are trying to dispose of an asset that the creditors would not want and has shown that they did not want. And therefore, what the district court did, again, was a conclusion — resolving a dispute of fact and then also trying to reach a legal remedy that is not afforded either by — that we can find by the bankruptcy law or the trademark law, even if there was a conveyance. You certainly — you certainly don't dispute that a district court has the authority to end a trademark, do you? Your Honor — You don't dispute that. That's in the law. The district judge does have that authority. Okay. But the authority is governed — That's what he did. It is governed by trademark law. It would have to be — it would have to show whether or not the trademark had been abandoned. It's governed by a relatively limited set of factors set out by the Lanham Act. And the district court did not show abandonment. The facts do not show abandonment. It shows that they're trying to keep and keep exercising these trademarks. And furthermore, the trademark law does not allow for this rather undesirable situation here where multiple parties and businesses can be selling the same product under the same mark. You don't — you don't disagree that a district court has jurisdiction to rectify a register, do you? No, I do not disagree with that. I do disagree with the district court's exercise of that right in this case. It is not supported by the law. It's not supported by trademark law, which would only allow a cancellation if there was an abandonment. I don't see anything in trademark law that talks about fraudulent conveyance as a basis for cancellation. And I don't see anything in trademark law that would allow for the kind of injunction that leaves these marks basically open to be used by anyone and everyone concurrently. And again, just to back up to my main point, which is that based on the testimony or the very limited evidence that was created at the preliminary injunction level, the district judge did not have the ability to rule as a matter of undisputed fact that even a fraudulent conveyance happened. And as I said, there's no law that connects that resolution of fact to the final order and judgment here. And I would like to reserve the remainder of my time. Thank you. Good morning, Your Honors. I'd like to reserve five minutes of my time for Sir Rebuttal, if I may. We're on here – this is Jeff Greger for Plaintiffs' Appellees' Air Fragrance Products and Monee Hakeem. We normally don't allow Sir Rebuttal. Very well. At least I don't. We're here on a trademark case, and we seem to be kind of focusing more on this fraud issue, which the district court judge focused on. And I'll submit to you, having been involved in this case now for 10 years, and with all due respect to my co-counsel, who guided me just on a reply brief on this, a lot has happened. But this judge was a bankruptcy judge and just never really understood what a trademark is, what goodwill is. And what he did, if you read the briefs, is he took all my analysis and just took the – changed the conclusion at the end to come up with how he wanted it to come out, which is, as Your Honor had it, was, look, these parties are doing fraudulent conveyances. And he said it very clearly. Epox on all your houses. Get out of the courtroom. And I said, Your Honor, look, we're here on a preliminary injunction motion. You've got to make a ruling. And he sat there, and we went through trademark law for a half hour. And he came up with a preliminary injunction. And at the end, he said, I'm going to preserve the status quo. And I said, good. To preserve the status quo was we'll remove the impoundment at the Canadian border so that my client's goods could continue to travel and be used in commerce, which had been impounded because the defendant had recorded this bogus assignment. And then because it's an administerial act, the government simply records whatever you file, and then customs takes it as face value. And then they look at it afterwards. So that's why we had to move for a preliminary injunction to get the goods flowing back again. But in the end, he said, in the preliminary injunction phase, each side could continue to use the mark at the same time. And I said, Your Honor, that flies in the face of trademark law. You can't have that. I said it's fine for right now because if you read the pleadings, and I'll show you in the pleadings where the plaintiffs pled that they've been using this mark continuously and the defendants agree that our clients have used it continuously and they have not, that if they did commence use, that there would be customer confusion. And the judge says, too bad. If that happens, I said, I'll come right back out here if that happens and be looking for an injunction. And the judge says, and I will not grant that injunction. So based on that, that's why we steered towards this common law rights issue, and I don't think the judge understood that. The whole issue in this case is that the district court abused its discretion in issuing an overboard injunction, which in the end defies trademark law, defies the public interest, and says these two parties can't claim exclusive rights to the other, which was the whole basis of what the declaratory judgment was there to begin with. And Your Honor asked, what about the bankruptcy issue? Well, what's a person to do? There are proper procedures in this. This happens all the time in business. Businesses go insolvent. Trademarks go into bankruptcy, and trademarks come out of bankruptcy. Had they done what was right, Mr. Marcus could have put his company in bankruptcy, and if he played everything properly through the end, what happens in trademark law is that the trademark comes out of bankruptcy, and unless the creditors go into the business or they sell the trademark to someone who's in the business, the trademark usually then will fall back to the original owner out of the bankruptcy to do with what they want. But in this case, rather than do that, what these parties did is Ms. Hakeem was owed a lot of money. She was a saleswoman. She was a manager. Mr. Marcus was trying to avoid his creditors. He fled the country, and this assignment was written. Now, the judge made a determination that it was a fraudulent conveyance, but my point is it doesn't matter. We're not focusing on whether or not the conveyance was fraudulent. Yes, she had to declare bankruptcy, and the judge's error was that besides this overboard injunction, he said that Hakeem hid the trademarks in the bankruptcy, and that's not true. You could look right in my brief, and you compare the order at page 3 of 10 where the judge said that she hid the assets and compare that with the excerpts on the record at 88 to 15, page 14 to 24, where all the trademarks are listed. The inchoate agreement with Victoria's Secret is listed. The domain names are listed. Every document, every intellectual property right was listed because she didn't know and the bankruptcy lawyer didn't know that customer lists are intangible property. Domain names are intangible property. Trademark formulas are intangible property. So they were there in the bankruptcy, and I personally did call First Bank and Trust to try to get them to come and make an appearance, but there's so little money involved in this case, they wanted nothing to do with it. So the bank was on the case. So this all went wrong in the bankruptcy court? Excuse me? So this all went wrong in the bankruptcy court? No, the bankruptcy court that Ms. Hakeem filed her bankruptcy, the only credit, the only creditor with any strong claim was the bank who had a million-dollar judgment. They had chased her and gotten all the tangible assets, but this is the most important part that seems to be missing is that if you look at the bankruptcy law, how do you deal with trademarks? And the reality is is that a trademark never is not something that a creditor can attack. It simply isn't unless they're willing to go into the business. However, a smart creditor will take control, find somebody who's in the business, and sell it. They could have done that in this case because there was an agreement with Victoria's Secrets. They would have been glad to buy it, but instead they sued Victoria's Secrets. And they sued Victoria's Secrets, and Victoria's Secrets came to court and said, look, we don't care who we pay the $25,000 a year license agreement to, just tell us, Your Honor. And both parties agreed to dismiss Victoria's Secrets to resolve who's got the title. And the point that I'm trying to make is that the title and trademarks go with continuity. Now, what Ms. Hakeem did, and if it was in cohorts with the defendant, Mr. Marcus, in fraud of the creditors, that's something that she had to pay the piper when it came to her bankruptcy. And she went through bankruptcy, she went through it two times, and she came out of it. But the important thing to focus on is that since 2000, when this started, she's been running this business. She still runs this business to this day. She has new investors. She had this gentleman, Mr. Morris, Morris and George Morrison from Delta, B.C., who invested money, helped her physically remove Mr. Marcus from the business. And his, or the defendant's position is, is that even though they were removed from the business, everything was done in an oral trust for them, and that all this use that my client has should inure to them. When, that can't be right. If property law, he signed the assignment, granted it was, he was intending to do it to fraud his creditors. But when she came to me to record that assignment, I recorded it under Section 215 U.S.C. 1060 with the U.S. Patent and Trademark Office, put everybody on notice that Ms. Hakeem was the owner of these trademarks. At that point is when, after the fact, I was told that there was this agreement with Victoria's Secret. So I informed Victoria's Secret of the recordal, and they proceeded to deal with me and my client, Ms. Hakeem. It wasn't until years later that there was this wrestling for the control over the business after the smoke had settled from the bankruptcy, and Mr. Marcus, the defendant, comes back and tries to wrestle the control with some more series of assignment recordings with the PTO, which is an interesting administrative thing. When the United States Patent and Trademark Office moved to electronic filing, they have a system where you can simply take a document, scan it, and say that you're the new owner. And I explained this to the district court judge. I said, if I want to own Coca-Cola tonight, I could write an assignment to myself to Coca-Cola, record it, and the PTO will actually put me down, Jeff Greger is the owner of Coca-Cola. I can go to customs. Now, obviously, that's a famous mark. They wouldn't be bamboozled by that. But it literally will show up on there until somebody comes into court to challenge the validity of that document. So defendants did that. I then sent it, just redid it back to my name, and then they told me that if I did that again, that they would file a complaint with the Virginia Bar. So it left me no choice but to come to court under the declaratory judgment action to clear the cloud over the title, over who has rights to use the trademarks that have been used continuously from day one, notwithstanding the other assets and the bankruptcy and the creditors. The issue is still before the court, and this court is, what do we do under this fact pattern? I guess my worry, and I'm trying to follow you through, but I guess my worry is this. If, in fact, Hakeem and Marcus transferred the rights, if you will, from A11 to Hakeem, and that was a transfer that is void because it was made in defraud of its creditors, I'm still trying to figure out how I get it to Hakeem. Okay. Let me explain, because this is really important. I mean, to me... It's the issue of consideration here. I appreciate that. Okay. The issue is, and the court had a hard, the district court had a hard time with this, too, and the way that the district court disposed of it is said that she didn't give any compensation, she didn't give any consideration. It was all this, you know, sham. And my position is with trademarks, look, I could be on the East Coast and say that if you're on the West Coast, I'm going to give you a million dollars for your trademark, for your business, and I give you that million dollars. It doesn't mean anything. If I don't take control of the business and operate that business, that million dollars doesn't transfer the goodwill. Consideration in the form of money means nothing in trademark law. The cases I cited in my brief make it very clear. The mark goes where the business goes. So the fact that they did these issues over money, that's missing the point. The point is what happened to the customer list, the customers who were sending the checks, the fragrances, and who was producing it? My point is when the judge said that there was no substitute for consideration in the form of detrimental reliance, there is detrimental reliance. When she decided, look, I worked for this son of a, you know what, for so long, and I got basically the shaft because I didn't get my money. Now he's insolvent. He ripped off a bank for a million dollars. What am I going to do? Well, let's see. I know this business. I could run it. He makes this grand scheme, says, okay, I'll let you run it. I'll give you all the document, all the paperwork. We have a side agreement. You give it back to me. She's like, yeah, yeah, yeah, give me the document. She comes to the lawyer, me, who doesn't know that there's a hidden side agreement. I record it. She runs the business. Then she becomes savvy and realizes that she has something of value. And my point is, is running that business and then subsequently, Heirs Fragrance Product is a party in this company. Now this is a Canadian entity that was five years removed from whatever happened between Mr. Marcus and Ms. Hakeem. When they moved up to Canada, they went through several reiterations of owners, a Ms. Jad Sahu and then a Ms. Nielsen, and then eventually Mr. Morrison's son, Jesse, who was a packer in the fragrance factory. They had some odor issues, and Mr. Morrison and his company bought this company five years later. And my point is that he invested over $200,000 to help clear out Mr. Marcus, pay off all the debts from the vendors that had gotten ripped off. And my point being that obviously $200,000 is a lot of money to consideration, but when you work a business, that is detrimental reliance. And if you look at trademark law and the cases that say the mark goes where the goodwill of the business goes, where there's continuity in what the customer sees, Ms. Hakeem kept her customers. She was the salesperson. She kept the customers. So even though Mr. Marcus was out of it and AII was no longer a party to this and was out of the case, she kept the Heirs brand. This is all about branding. It was called Heirs World. She had the domain name. She kept that, too. Now, they want to fight over, but the issue on the trademark law is who's controlling the mark, who's controlling the quality of the goods, and are the customers getting the same product? And that's where the district court judge erred, and he abused his discretion by saying, I don't care whether the public's confused or not. I don't like these parties because, hey, look, I'm a bankruptcy judge. I'm looking out for this bank that lost a million dollars, and pox on your houses. Just get out of my courtroom. Well, that's unworkable. That's not right. What he should have realized is that, yeah, everybody should be put on notice that Ms. Hakeem or Mr. Morris, not Mr. Morris, Mr. Marcus, they had the right to declare bankruptcy. Stand up in court. Pay your dues. Do whatever you have to do. Ms. Hakeem did that. The judge said, no, I don't like the way your bankruptcy filings did. No problem, Your Honor. We're going to go back and reopen it. We'll call the bank. We'll say, everybody come here. If you want to attack any of these credits, any of these possible credits, including the trademarks, the Victoria's secret agreement, it's right there in the record. They did not want to come up. So if we go back in time and we do everything correct, it still comes out the same way. The trademark goes where the use is. And that was Ms. ---- There's no question, as I read the law in Mr. Donut, that you're not going to have any trademark if you don't also transfer the goodwill. And I think that there's no question that they don't get the trademark if they don't get the goodwill, and then if they don't have continuous use of the mark. Therefore, it seems to me that your clients have the best chance at this. I guess my biggest problem, again, is all of this transfer seems to have been made in transfer of defraud of the creditors. So it is all, and I'm just reading what the good old district judge tried to do here, and I guess this is where I needed you to suggest a reason why this shouldn't be on the books of A-1-1. Of course it should have been on the books of A-1-1. Mr. Marcus's company could have come out of ---- It was insolvent, but it didn't stop it from stepping forward. But his debt was so deep, he didn't want anything. He said he fled the country. So A-1-1 was never a party to the action. As never being a party to the action, then, the question is, since she took transfer initially, kept the business going through a couple of different owners, the continuity and the goodwill always remained with her. And she protected herself, even though she was named into bankruptcy in the lawsuit by the bank, by declaring bankruptcy and doing what the law requires her to do. And my point is, is what else could she have done to change it under this fact pattern? She did everything that she was supposed to do from day one. Now, Your Honor asked earlier, you know, doesn't the district court have the power just to, you know, cancel a trademark? I say, no way. Why would you say that? A trademark is a thing that we can't touch. It's a goodwill of value. Well, but generally under the law, the district court has the jurisdiction to cancel marks. To cancel a federal trademark, yes. And he did that in this instance. I'm talking about the common law intangible right. I understand. The brand. I understand that. All right. And so the position that we're taking is what you need to do here is you do need to affirm in part that part that says that Mr. Marcus and the defendants never, they never owned any property right to begin with. And we didn't even discuss this. I only have two minutes left. But to own a valid trademark, you have to show use. That's the first step to owning a valid trademark. And then you go into whether there's a likelihood of confusion analysis if two people are using it. We don't even have the second prong. We're just stuck on this first prong. Who's using a mark? It's indisputed, undisputed that Mr. Marcus in his individual capacity and Clover Gifts and Patricia Loud never used the mark. They tried to use my client to inure that benefit to them. And to the extent that the district court said, well, yeah, I understand that, but I have a problem with that. I don't have a problem not giving it back to him, but I still have a problem giving it to you. And that's what your honors are having trouble with right now, too, is, hey, why should we grant you any common law rights? And my position is that my client did everything that she could do. Once a mistake is made, people make mistakes all the time. Companies go bankrupt. They're insolvent. What are they supposed to do? Okay. So she decided she was going to stay in business. Then it came time to pay the piper. The bank came running. So she declared bankruptcy. She came out of the bankruptcy. She stole the trademark. She was still using the mark. And here we are today, 10 years later, she's still using the mark. And Victoria's Secret has one of the most famous perfume lines out there called Dream Angels. And based in part because my client has been using the Angel Dream mark and been honoring this agreement. And Victoria's Secret has also been honoring the agreement, but everything's in escrow at this particular point in time. I've got a minute left. Do you have any questions? All right. Well, I'll ask that you affirm that portion that the defendant's being joined. But because of the exclusivity issue and the continuity, your honors can simply reverse and the injunction should be rewritten. And you can do that on your own. That gives Heirs Fragrance Products and Ms. Hakeem, based on their continued use, the right to use the mark that they've been using. And I'll add that to rectify the Federal Trademark Register accordingly, that all the trademarks that they had that the judge canceled ought to be put back in their name as well. And if not, they at least have the right to file new applications for these. The judge even went so far as to say you'll never even file anything with the government ever again. That can't be right. Because if you abandon a mark, they could. Where is Victoria's Secret in all of this? Are they still at the agency? Victoria's Secret is tickled pink that we're fighting. They're doing fine. Yeah. They're real happy. They're paying them $25,000. Their bottom line is whoever wins, we can afford to pay it. Don't worry. Well, they've paid it into escrow, have they not? That's what they told me at first, but we'll see. You're not even sure of that? Well, it was. I trust them. The bottom line is when we got into a dispute over that later on, they said it doesn't matter. Oh, that's another dispute. Okay. Yeah, exactly. I don't care about that one. That's the next case. We don't need that one. Thank you. Thank you. If I may take my very brief amount of time left. The appellees agree that the district court injunction and final order should be reversed, and so both parties agree on that. I don't think the district judge's final injunction can be partially reversed in the manner that the appellees say because he did say a pass on both of your houses. He did lay the same allegations of fraud. Those are all facts that do need to be sorted out, and really there is no simple way out of this. We've got to figure out who owns these marks, and it needs to go back to the district court to do that. There's no silver bullet that says fraud, therefore nobody owns it, fraudulent conveyance, nobody owns it, or as what the appellee's apparently saying, which is there may have been fraud, there may have been all of these other things, but suddenly now they jump in under common law right. Their common law rights are under a color of, are colored by what happened in the transaction. They didn't innocently jump into using this, these marks independently. As a case in point, I mean, when Mr. Marcus transferred these marks from his former company to Ms. Hakeem, he in fact went to work with him. He brought his formulas with him and he demonstrated the control, the quality control over the mark that is necessary to show that he's still exercising and AII is still trying to exercise control over the goodwill. The final thing I'd like to mention is that, you know, the district court did try to get rid of the entire case. There was, there is still a trade secret claim based on the formulas, which Mr. Marcus always kept secret, in fact. The appellees have stated that, you know, they, you know, when he took away his computer, they didn't have the formulas for the perfumes anymore. So there was, there are many things that I think the district judge tried to silver bullet and get rid of this case on and it cannot be done. It has to be returned and adjudicated on the facts. Thank you, Your Honor. Thank you. This is argued and submitted for decision. That concludes the Court's calendar for this morning and the Court stands adjourned.
judges: Moody, Schroeder, Smith N. R.